IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

RX TRIALS, LLC,  \*
Successor-In-Interest to
Rx TRIALS, INC.,  \*

    Plaintiff,  \*

v.  \*  Case No. 1:18-cv-02289-JMC

COASTAL BIOMEDICAL  \*
RESEARCH, INC., ET AL.
      \*
    Defendants.
      \*

\*\*\*\*\*\*

**MEMORANDUM OPINION**

The case is before me for all proceedings by the consent of the parties pursuant to 28 U.S.C. § 636(c). (ECF Nos. 15 & 16). Now pending is Plaintiff's ("Rx Trials'") Motion for Summary Judgment on all counts, against Coastal Biomedical Research, Inc. ("Coastal") and Linda A. Glaser, M.D., (collectively, the "Defendants"). (ECF No. 27). No response in opposition was filed and no hearing is needed. *See* Loc. R. 105.6 (D. Md. 2018). For the reasons stated below, the unopposed motion is **DENIED**.

**I.    BACKGROUND**

Rx Trials is a limited liability company, organized under Maryland law, that specializes in clinical research trial efficiency and consulting. (ECF No. 3 at ¶ 2). Coastal is a corporation, organized under California law, that conducts clinical research trials and is owned and operated by Dr. Glaser. (*Id.* at ¶¶ 3, 66–68). On June 15, 2013, Rx Trials and Coastal entered into a Partner Site Agreement for consulting services and site management research. (ECF No. 27-1). Per the agreement, Coastal would utilize Rx Trial's clinical trial management software (the "Software").

(*Id.* at 20). Not only would the Software help with site management, but it would permit Rx Trials to keep track of the trials for billing purposes. In exchange for Rx Trial's services and Software, Coastal agreed to compensate Rx Trials by payment of a percentage of each month's revenue based on a tiered payment schedule outlined within the Agreement. (*Id.* at 22). The parties agreed that all clinical trials would utilize Rx Trial's services and software, and thus all trials were subject to the pricing schedule. (*Id.*). Furthermore, Coastal was to send Rx Trials all payments made to Coastal by trial sponsors and supply records of payment each month. (*Id.*). Once all the information on revenue was gathered, Rx Trials would issue an invoice to Coastal which would be due within thirty (30) days of receipt. (*Id.*).

It is undisputed that Coastal ignored these obligations and breached the Agreement. Dr. Steven Geller, the managing member of Rx Trials, provides an affidavit in which he affirms that Coastal and Dr. Glaser stopped utilizing the Software, ceased updating Rx Trials as to what clinical trials Coastal was performing, and instructed trial sponsors to compensate Coastal in a manner that Rx Trials could not monitor. (*Id.* at 29). During this time Coastal conducted clinical trials that generated over $1.1 million in revenue. (*Id.*). The majority of this revenue, however, was never reported to Rx Trials as required by the Agreement.

Once Rx Trials discovered Coastal's conduct it served a formal notice of default. Coastal never responded. Accordingly, Rx Trials filed this suit on July 26, 2018 alleging four counts: Count 1 – Breach of Contract against Coastal; Count II – Intentional Concealment against Dr. Glaser; Count III – Negligence against Coastal; and Count VI – Violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"). (ECF No. 3). Plaintiff seeks actual damages under the Agreement of $209,060.30; treble damages under RICO of $627,180.90; and attorneys' fees and costs. Despite this Court having already entered default judgment of all counts against

Coastal (Counts I and III), Plaintiff now asks that this Court enter summary judgement on all counts against both Defendants on the merits. (ECF No. 27-1).

## II. STANDARD OF REVIEW

Federal Rule of Civil Procedure 56(a) requires the Court to "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party can do so by demonstrating the absence of any genuine dispute of material fact or by showing an absence of evidence to support the non-moving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–25 (1986). A dispute as to a material fact "is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *J.E. Dunn Const. Co. v. S.R.P. Dev. Ltd. P'ship*, 115 F. Supp. 3d 593, 600 (D. Md. 2015) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

If a motion for summary judgment goes unopposed, the Court must still view the facts and draw reasonable inferences in the light most favorable to the nonmoving party. ; *Iko v. Shreve*, 535 F.3d 225, 230 (4th Cir. 2008); *Custer v. Pan Am. Life Ins. Co.*, 12 F.3d 410, 416 (4th Cir. 1993). Moreover, the movant still must show that the uncontroverted facts entitle the party to judgment as a matter of law. *Custer*, 12 F. 3d at 416.

## III. DISCUSSION

As an initial matter, the Court will decline Plaintiff's invitation to rule on Counts I and III again. Although the Fourth Circuit has a "strong policy that cases be decided on their merits," it is not absolute. *United States v. Shaffer Equip. Co.*, 11 F.3d 450, 453 (4th Cir.1993). This Court's June 10, 2019 Order entered default judgment in favor of Plaintiff on all counts against Coastal. (ECF No. 24). Besides a vague desire that the counts be decided "on the merits[,]" Plaintiff offers no reason for why the already issued default judgment is insufficient. Not only had the adversarial

process been halted by Coastal's unresponsiveness, but Coastal failed to appoint Counsel after notice and in violation of the Local Rules. (ECF No. 23). These grounds for default remain unchallenged and unchanged. Absent a motion to set aside the judgement, there is no need to revisit what has already been done. Accordingly, Plaintiff's Motion for Summary Judgment on Counts I and III against Coastal, (ECF No. 27), is **DENIED as moot**.

This leaves Plaintiff's counts against Dr. Glaser for intentional concealment and civil RICO violations.

### A. Intentional Concealment

Plaintiff argues that Dr. Glaser's conduct amounts to intentional concealment because she, as an agent of Coastal, did not make the disclosures as required by the Agreement, did so to purposefully defraud, and these nondisclosures were replied upon by Plaintiff to its detriment.

Under Maryland law, a claim of intentional concealment or fraudulent concealment must establish that: (1) the defendant owed a duty to the plaintiff to disclose a material fact; (2) the defendant failed to disclose that fact; (3) the defendant intended to defraud or deceive the plaintiff; (4) the plaintiff took action in justifiable reliance on the concealment; and (5) the plaintiff suffered damages as a result of the defendant's concealment. *Hill v. Brush Engineered Materials, Inc.*, 383 F. Supp. 2d 814, 820 (D. Md. 2005). In accordance with this a Plaintiff can prove the claim by proving either "that Defendant had a duty to disclose a material fact to them and failed to do so, or that Defendant concealed a material fact for the purpose of defrauding Plaintiff." *Odyssey Travel Ctr., Inc. v. RO Cruises, Inc.*, 262 F. Supp. 2d 618, 629 (D. Md. 2003). Absent evidence of fraudulent intent, intentional concealment may still be shown when a duty to disclose exists but "defendant makes an active misstatement of fact, or only a partial or fragmentary statement of fact, which misleads the plaintiff to its injury." *Id.* "[O]rdinarily when one owes no legal obligation to

speak, mere silence is not actionable; but if what is stated amounts to a 'partial and fragmentary' disclosure, that misleads because of incompleteness, the 'legal situation is entirely changed.'" *Id.* (quoting *Lubore v. RPM Associates, Inc.*, 109 Md. App. 312, 330–31 (1996)).

Here, Plaintiff has established duties under the Agreement for the reporting of clinical trials and payments. (*See* ECF No. 27-1 at 18-35). Moreover, the record shows that Coastal did not accurately report the trials or revenue, causing Plaintiff to invoice for less than it was owed had the terms of the Agreement been fully complied with. At first blush the claim appears to be established, but the accused party prevents summary judgement as requested. The duties of disclosure ran between the signatories of the Agreement. While Dr. Glaser's signature is on the Agreement, it is on behalf of Coastal, not herself personally. Without further evidence or argument as to the scope of Dr. Glaser's agency, the existence of personal guarantees, or the appropriateness of piercing the corporate veil, there are no grounds for imposing liability on Dr. Glaser for conduct attributable to Coastal. There is no doubt that Dr. Glaser plays a central role in these circumstances, but Plaintiff has failed to show how or why she may personally be held liable for Coastal's failure to honor its Agreement. Accordingly, Plaintiff has failed to show that it is entitled to relief under Count II as a matter of law.

### B. RICO Violations

Plaintiff also argues that the breadth and scope of the conduct at issue amounts to Dr. Glaser violating RICO. Under 18 U.S.C. § 1962, it is unlawful, *inter alia*, for any person employed by or associated with any enterprise to conduct or participate in the "enterprise's affairs through a pattern of racketeering activity . . . ." 18 U.S.C. § 1962(c). But, RICO is not limited to criminal cases. In addition to criminal penalties, Congress "granted a private civil right of action to '[a]ny person injured in his business or property by reason of a violation of' the RICO provisions." *ESAB*

*Grp., Inc. v. Centricut, Inc.*, 126 F.3d 617, 626 (4th Cir. 1997) (quoting 18 U.S.C. § 1964(c)). A civil RICO action "is a unique cause of action that is concerned with eradicating organized, long-term, habitual criminal activity." *US Airline Pilots Ass'n v. Awappa, LLC*, 615 F.3d 312, 317 (4th Cir. 2010)). It "is not a cause of action to be pled lightly," and "is reserved for conduct whose scope and persistence pose a special threat to social well-being." *Biggs v. Eaglewood Mortg., LLC*, 582 F. Supp. 2d 707, 714 (D. Md. 2008), *aff'd*, 353 F. App'x 864 (4th Cir. 2009). Consequently, the Fourth Circuit "will not lightly permit ordinary business contract or fraud disputes to be transformed into federal RICO claims." *Flip Mortg. Corp. v. McElhone*, 841 F.2d 531,538 (4th Cir. 1988).

To prevail, a RICO count must establish: "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Morley v. Cohen*, 888 F.2d 1006, 1009 (4th Cir. 1989). The statute defines several of these operative terms. "Enterprise," as set forth in 18 U.S.C. § 1961(4), "includes any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." The same statute defines "racketeering activity" as "any act which is indictable" under several enumerated criminal provisions. *Id.* at § 1961(1). A "pattern of racketeering activity," moreover, "requires at least two acts of racketeering activity, one of which occurred after the effective date of [RICO] and the last of which occurred within ten years (excluding any period of imprisonment) after the commission of a prior act of racketeering activity." *Id.* at § 1961(5).

Plaintiff argues that Dr. Glaser's intentional and fraudulent violations of the Agreement and use of interstate telephone and electronic mail to perpetuate the fraud, constitutes the requisite pattern of racketeering activity. This Court disagrees. To establish a pattern of racketeering activity Plaintiff must show: "(1) at least two predicate acts occurred within ten years of each other;

6

(2) the predicate acts were related; and (3) the acts 'amount to or pose a threat of continued criminal activity.'" *Swarey v. Desert Capital REIT, Inc.*, 2012 WL 4208057, at *12 (D. Md. Sept. 20, 2012) (quoting *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 239 (1989)).  Acts are related if they "have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events." *H.J. Inc.*, 492 U.S. at 240.  The Fourth Circuit further elaborated that "only a party engaging in widespread fraud would be subject to" the serious consequences available under the statute, and the continuity requirement ensures that RICO liability is reserved for "ongoing unlawful activities whose scope and persistence pose a special threat to social well-being." *Menasco, Inc. v. Wasserman*, 886 F.2d 681, 683 (4th Cir.1989).

The essence of Plaintiff's case is that Defendants breached the Agreement.  In this the Court is not prepared to find that use of telephones or electronic mail transform this contractual dispute into a RICO claim.  *See Maryland-Nat'l Capital Park & Planning Comm'n. v. Boyle,* 203 F. Supp. 2d 468, 477 (D. Md. 2002), *aff'd sub nom.*, 63 Fed. App'x. 98 (4th Cir. 2003).  Besides the alleged violation of the single agreement, Plaintiff supplies no record evidence concerning the existence of widespread fraud or continuing racketeering activity as contemplated by the statute. This business dispute does not reflect any conduct of a "criminal dimension[,]" "any threat of organized criminal activity[,]" or any ongoing or persistent "special threat to social well-being." *Id.*  Plaintiff is already properly addressing the alleged harm through the state law claims within the Complaint.  Seeing no basis for invoking the extraordinary remedies of RICO, this Court finds that Plaintiff is not entitled to relief as a matter of law under Count VI.

**IV.    CONCLUSION**

Accordingly, Plaintiff's Motion for Summary Judgement, (ECF No. 27), on Counts I and III is **DENIED as moot**, and on Counts II and IV is **DENIED**. A separate order follows.

Dated: August 26, 2019                              /s/
                                          J. Mark Coulson
                                          United States Magistrate Judge