IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| RX TRIALS, LLC,<br>Successor-In-Interest to<br>Rx TRIALS, INC., | * | |
| | * | |
| Plaintiff, | * | |
| v. | * | Case No. 1:18-cv-02289-JMC |
| COASTAL BIOMEDICAL<br>RESEARCH, INC., ET AL. | * | |
| | * | |
| Defendants. | * | |
| | * | |

\*\*\*\*\*\*

**MEMORANDUM OPINION**

The case is before me for all proceedings by the consent of the parties pursuant to 28 U.S.C. § 636(c). (ECF Nos. 15 and 16). Now pending before this Court is Plaintiff's ("Rx Trials") Amended Motion for Summary Judgment as to Count II (Intentional Concealment) against Linda A. Glaser, M.D. ("Defendant"). (ECF No. 31). Defendant did not file an opposition and no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2018).

**I.     BACKGROUND**

Rx Trials is a limited liability company, organized under Maryland law, that specializes in clinical research trial efficiency and consulting. (ECF No. 3 ¶ 2). Coastal is a corporation, organized under California law, that conducts clinical research trials and is owned and operated by Dr. Glaser. *Id.* ¶¶ 3, 66–68. On June 15, 2013, Rx Trials and Coastal entered into a Partner Site Agreement for consulting services and site management research. (ECF No. 27-1). Per the agreement, Coastal would utilize Rx Trial's clinical trial management software (the "Software") for site management, and this would permit Rx Trials to keep track of the trials for billing purposes.

In exchange for Rx Trial's services and Software, Coastal agreed to compensate Rx Trials by paying it a percentage of each month's revenue based on a tiered payment schedule outlined within the Agreement. *Id.* at 22. The parties agreed that all clinical trials would utilize Rx Trial's services and Software, and thus all trials were subject to the pricing schedule. *Id.* Furthermore, Coastal was to send Rx Trials all payments made to Coastal by trial sponsors and supply records of such payments each month. *Id.* Once all the information on revenue was gathered, Rx Trials would issue an invoice to Coastal which would be due within thirty (30) days of receipt. *Id.*

It is undisputed that Coastal ignored these obligations and breached the Agreement. Dr. Steven Geller, the managing member of Rx Trials, submitted an affidavit in which he affirms that Coastal and Dr. Glaser stopped utilizing the Software, ceased updating Rx Trials as to what clinical trials Coastal was performing, and instructed trial sponsors to compensate Coastal in a manner that Rx Trials could not monitor. *Id.* at 29. During this time Coastal conducted clinical trials that generated over $1.1 million in revenue. *Id.* The majority of this revenue, however, was never reported to Rx Trials as required by the Agreement.

Once Rx Trials discovered Coastal's conduct, it served a formal notice of default. Coastal never responded. Accordingly, Rx Trials filed suit in this Court on July 26, 2018 alleging four counts: Count 1 – Breach of Contract against Coastal; Count II – Intentional Concealment against Dr. Glaser; Count III – Negligence against Coastal; and Count VI – Violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"). (ECF No. 3). This Court entered a Default Judgment as to Counts I and III against Coastal. (ECF No. 27-1). Plaintiff then filed a Motion for Summary Judgment, which this Court denied on August 26, 2019. (ECF No. 29).

Plaintiff now seeks a Motion for Summary Judgment as to Count II in the amount of $209,060.30. (ECF No. 31-2 at 1).

## II. STANDARD OF REVIEW

Federal Rule of Civil Procedure 56(a) requires the Court to "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party can do so by demonstrating the absence of any genuine dispute of material fact or by showing an absence of evidence to support the non-moving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–25 (1986). A dispute as to a material fact "is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *J.E. Dunn Const. Co. v. S.R.P. Dev. Ltd. P'ship*, 115 F. Supp. 3d 593, 600 (D. Md. 2015) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

If a motion for summary judgment goes unopposed, the Court must still view the facts and draw reasonable inferences in the light most favorable to the nonmoving party. *Iko v. Shreve*, 535 F.3d 225, 230 (4th Cir. 2008); *Custer v. Pan Am. Life Ins. Co.*, 12 F.3d 410, 416 (4th Cir. 1993). Moreover, the movant still must show that the uncontroverted facts entitle the party to judgment as a matter of law. *Custer*, 12 F.3d at 416.

## III. DISCUSSION

On August 26, 2019, this Court denied Plaintiff's Motion for Summary Judgment against Dr. Glaser as to Counts II (Intentional Concealment) and County IV (RICO violations). Plaintiff argues that the reasons underlying this Court's denial of Count II are addressed and remedied in this Amended Complaint. (ECF No. 31-2 at 1). Consequently, Plaintiff requests the Court enter Summary Judgment in favor of Plaintiff and against Dr. Glaser as to Count II- Intentional Concealment, in the amount of $209,060.30. (ECF No. 31-2 at 1).

**Count II- Intentional Concealment**

Under Maryland law, a claim of intentional concealment or fraudulent concealment must establish that: (1) the defendant owed a duty to the plaintiff to disclose a material fact; (2) the defendant failed to disclose that fact; (3) the defendant intended to defraud or deceive the plaintiff; (4) the plaintiff took action in justifiable reliance on the concealment; and (5) the plaintiff suffered damages as a result of the defendant's concealment. *Hill v. Brush Engineered Materials, Inc.*, 383 F. Supp. 2d 814, 820 (D. Md. 2005). "Plaintiff must prove *either* that Defendant had a duty to disclose a material fact to them and failed to do so, or that Defendant concealed a material fact for the purpose of defrauding Plaintiff." *Odyssey Travel Ctr., Inc. v. RO Cruises, Inc.*, 262 F. Supp. 2d 618, 629 (D. Md. 2003). Intentional concealment may be shown when a duty to disclose exists but "defendant makes an active misstatement of fact, or only a partial or fragmentary statement of fact, which misleads the plaintiff to its injury." *Id.* ("[O]rdinarily when one owes no legal obligation to speak, mere silence is not actionable; but if what is stated amounts to a 'partial and fragmentary' disclosure, that misleads because of incompleteness, the 'legal situation is entirely changed.'") (quoting *Lubore v. RPM Assocs., Inc.*, 109 Md. App. 312, 330–31 (1996))).

Plaintiff argues that Dr. Glaser's conduct amounts to intentional concealment because as an agent of Coastal she did not make the disclosures as required by the Agreement; did so with the intent to purposefully defraud; and Plaintiff relied upon these nondisclosures to its detriment. Previously, this Court found this argument unpersuasive, despite the fact that Plaintiff established duties under the Agreement for the reporting of clinical trials and payments, because such duties ran only between the signatories of the agreement. Specifically,

> While Dr. Glaser's signature is on the Agreement, it is on behalf of Coastal, not herself personally. Without further evidence or argument as to the scope of Dr. Glaser's agency, the existence of personal guarantees, or the appropriateness of piercing the corporate veil, there are no grounds for imposing liability on Dr. Glaser for conduct attributable to Coastal. There is no doubt that Dr. Glaser plays a central role in these circumstances, but Plaintiff has failed to show how or why she may

4

personally be held liable for Coastal's failure to honor its Agreement. Accordingly, Plaintiff has failed to show that it is entitled to relief under Count II as a matter of law.

The principle that Plaintiffs asserts, that an officer of a corporation is liable for the torts of a corporation in limited circumstances, is correct. *Toliver v. Waicker*, 210 Md. App. 52, 61 (2013). Here, Plaintiff provides sufficient support to indicate that Dr. Glaser can be held personally liable for the fraudulent acts she directed, controlled, or personally committed, and cannot hide behind principles of agency or the corporate veil to shield herself from personal liability. (ECF No. 31-2). *Cf. Toliver*, 210 Md. App. at 61 (recognizing an "officer may be liable for the torts that he personally commits, inspires, or participates in, even though performed in the name of the corporation.").

Under Maryland law a "participation" standard is used to determine whether a corporate officer may be held personally liable for a tort committed by the corporation. *CoStar Realty Info., Inc. v. Meissner*, 604 F. Supp. 2d 757, 769 (D. Md. 2009) (["A]n officer of a corporation who takes part in the commission of a tort by the corporation is personally liable . . . but an officer [who does not participate] is not personally liable unless he specifically directed the particular acts to be done or participated or co-operated therein." (quoting *Shipley v. Perlberg*, 140 Md. App. 257, 265 (2001))).

To evidence Defendant's "participation" Plaintiff cites six facts that are "most germane" in support of Dr. Geller's personal liability. (ECF No. 31-2 at 4). These facts are: (1) Dr. Glaser was the "Responsible Party" and "Principal Investigator" for all Clinical Trials; (2) Dr. Glaser was the sole point of contact for Rx Trials and the responsible party for all data entry in the software; (3) Dr. Glaser intentionally entered false data into the software and intentionally concealed the existence of trials, number of participants, and the amount of the payments received; (4) Dr. Glaser personally prepared invoices to Trial Sponsors and concealed from Rx Trials payment she

5

received; (5) and Dr. Glaser's Fraud was serendipitously discovered by Rx Trials. (ECF No. 31-2 at 4-7).

These arguments are supported by the Declaration of Steven Geller, a managing member of Rx Trials. (ECF No. 31-3). Specifically, Mr. Geller states that Dr. Glaser is the President, CEO, and sole shareholder of Coastal. *Id.* ¶ 4. Further, she was the sole point of contact for Rx Trials with respect to all things relating to the Partner Site Agreement and clinical trials. *Id.* ¶¶ 9, 10. Dr. Glaser also expressly represented, acknowledged, and agreed that she was in the individual at Coastal who was responsible for inputting all clinical study data relating to the clinical trials in the software. *Id.* ¶ 15. Dr. Glaser, using her personal email account, issued invoices for payments directly to the plan sponsors, clinical research organizations, and payment coordinators for studies to which Rx Trials was entitled to receive payment. *Id.* ¶ 19. *See* (ECF No. 31-6). She directed that these payments be delivered "C/O" or "Attn Linda Glaser, MD." (ECF No. 31-3 ¶ 19). According to Mr. Geller's review of the documents and information, Coastal Biomedical received a total of more than $1,187,893.92 in payments relating to clinical trials, which were owed to Rx Trials under the agreement. *Id.* ¶ 39. Pursuant to the parties' agreement, Rx Trials is entitled to "20% of all projected research gross with respect to all enrolling studies existing" as of the date of Coastal Biomedical's termination, and 20% of all research gross revenue with respect to all studies awarded to Coastal Biomedical prior to the date of termination. *Id.* ¶ 40. Accordingly, the total amount owed to Rx Trials is $209,060.30. *Id.* ¶ 41.

These claims are plausible, and properly allege that Dr. Glaser personally oversaw and directed the tortious conduct. Accordingly, Plaintiff has shown how and why Dr. Glaser may personally be held liable for Coastal's failure to honor its Agreement, and illustrated that it is

entitled to relief under Count II as a matter of law, and thus Count II, Intentional Concealment, against Dr. Glaser personally will stand.[1]

### IV.    CONCLUSION

Accordingly, Plaintiff's Amended Motion for Summary Judgement, (ECF No. 31), is GRANTED. A separate order shall follow.

Dated: November 13, 2019                         _____/s/_____
                                                 J. Mark Coulson
                                                 United States Magistrate Judge

---

[1] *See Paccar Inc. v. Elliot Wilson Capitol Trucks LLC*, 905 F. Supp. 2d 675, 680-81 (D. Md. 2012); *Fletcher v. Havre de Grace Fireworks Co.*, 229 Md. 196, 200–01 (1962) (holding officer and director of a fireworks company personally liable in a trespass action if they had "specifically directly, or actively participated or cooperated in, a particular act" that led to a series of explosions); *Levi v. Schwartz*, 201 Md. 575, 583–84 (1953) (holding the president of a development corporation personally liable for the corporation's tortious removal of lateral support from an adjacent landowner's lot, when the president had directly supervised the operation).